UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LOU OBSTFELD, *individually and on behalf of those similarly situated*,

                        Plaintiff,

             -against-

UNIFIN, INC.,

                       Defendant.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-cv-9492 (DLI)(JRC)

**DORA L. IRIZARRY, United States District Judge:**

On December 27, 2023, Lou Obstfeld ("Plaintiff") commenced this class action lawsuit against Unifin, Inc. ("Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). *See*, Compl.; Dkt. Entry No. 1. Defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim upon which relief may be granted. *See*, Motion to Dismiss ("Mot."); Dkt. Entry No. 10, 10-1. Plaintiff opposed the motion contending that he has standing and has made out plausible claims pursuant to 15 U.S.C. §§ 1692e, 1692f. *See*, Opp'n ("Opp'n"); Dkt. Entry No. 14. Defendant replied. *See*, Reply ("Reply"); Dkt. Entry No. 16.

For the reasons set forth below, Defendant's motion is granted because Plaintiff lacks Article III standing to bring this action and, thus, the Court lacks subject matter jurisdiction. Accordingly, the Court "lacks the power to adjudicate the merits of the case" pursuant to Rule 12(b)(6) and will not address Defendant's motion on this ground. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (internal citations omitted).

## BACKGROUND[1]

Plaintiff incurred and defaulted on a debt with Chase Bank USA N.A., which then sold the debt to Pinnacle Credit Services, LLC. Compl. ¶¶ 21–24. Pinnacle Credit Services, LLC contracted Defendant for the purpose of collecting on the debt. *Id*. ¶ 25. On April 6, 2023, Defendant mailed a letter to Plaintiff regarding the debt. *Id*. ¶ 27. Among other things, the letter informed Plaintiff that he has an outstanding $54,157.29 debt balance and the "creditor or debt collector believes that the legal time limit (statute of limitations) for suing [him] to collect this debt may have expired." *Id*. ¶¶ 28–30.

Plaintiff alleges that the letter is confusing regarding whether he will be sued and failed to clarify whether interest is accruing. *Id*. ¶¶ 32–35. Plaintiff asserts that the letter violates the FDCPA because it makes a false representation in an attempt to collect on the debt and deceptively misrepresents the legal status of the debt. *Id*. ¶¶ 36–39. Plaintiff asserts that Defendant's alleged violations caused him emotional and mental anguish stemming from the anxiety surrounding the legal ramifications of the outstanding debt. *Id*. ¶¶ 49, 52, 56.

## LEGAL STANDARD

Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing, and 12(b)(6) for failure to state a claim. Standing challenges may be brought under both rules, although "the proper procedural route [for such a challenge] is a motion under Rule 12(b)(1)." *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n. 6 (2d Cir. 2006) (internal citations omitted). "The distinction is important because a typical dismissal under Rule 12(b)(6) . . . is an adjudication on the merits with preclusive effect." *Id.*

---

[1] The facts below are taken from the Complaint and any incorporated documents. They are accepted as true as required at this stage of the case.

Subject matter jurisdiction is a threshold issue. Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the Court first must address the 12(b)(1) motion. *Sherman v. Black,* 510 F. Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)). It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.

In reviewing Rule 12(b)(1) motions to dismiss based on insufficiency of the complaint, the Court must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (relying on *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). The Court's task is to "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quotation marks and alterations omitted).

## DISCUSSION

Defendant contends that Plaintiff lacks Article III standing to bring this FDCPA action because his injuries have no "close common-law analogue," and, thus, has not suffered a concrete harm. Mot. at 10–11. Plaintiff alleges four harms he claims establish standing: (1) failing to receive required information; (2) financial consequences stemming from an effort to mitigate the risk of future financial harm; (3) detrimental reliance on Defendant's letter related to the common law analogue of fraudulent misrepresentation; and (4) emotional harms following his receipt of the

3

letter. *See*, Opp'n at 9–10. However, none of these purported harms confer Article III standing on Plaintiff.

To establish standing, a plaintiff must show that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by Defendant; and (3) the injury would likely be redressed by judicial relief. *See*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Congress may create a cause of action by statute, but mere violation of that statute does not give rise to standing to sue under Article III; an injury in fact is still required. *See, TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *See also, Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016), *as revised* (May 24, 2016) (holding that Congress may elevate harms where none existed before, but a statutory violation on its own will not establish a concrete harm).

There are two common types of concrete harm, tangible and intangible. *See, TransUnion*, 594 U.S. at 425. Tangible harms generally are the easiest to identify and encompass physical or monetary injury to the plaintiff. *Id*. Intangible harms are those that bear a "close relationship" to injuries traditionally recognized as providing a basis for lawsuits. *Id*. For courts to inquire whether a purported intangible harm bears that close relationship, plaintiffs must identify a common law analogue. *Id*. at 424–25. The Supreme Court has identified several concrete intangible harms such as: "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. (holding that the 1,853 class members who had their credit reports distributed to third parties with false Office of Foreign Assets Control terrorist alerts suffered intangible harm with a close analogue to defamation, but also holding that the 6,332 class members whose credit reports were not distributed did not suffer a concrete harm). The Second Circuit has held that "it matters not whether New York common law recognizes a tort," but "that the intangible harm arising from [defendant's action] bears a relationship to an injury with a close historical or common-law

4

analogue." *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) (internal quotation marks omitted).

There is a third type of concrete harm that is more difficult to ascertain: separate harm stemming from the risk of future harm. *See*, *TransUnion*, 594 U.S. at 438. As a general matter, future harm tends to be too speculative to support Article III standing. *Id.* (holding that a potential risk of misleading credit information being divulged to a third party did not establish a sufficient likelihood that such an accidental release would occur). However, the risk of future harm itself may cause a *separate* concrete harm that can establish standing. *Id*. at 436; *See also, Bohnak,* 79 F.4th at 286 (holding that the risk of future harm caused plaintiff's out-of-pocket expenses associated with the "prevention, detection, and recovery from identity theft," and other "opportunity costs" associated with attempting to mitigate the consequences of the data breach conferred standing). A plaintiff may not rely on mere conclusory allegations of harm. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75–76 (2d Cir. 2022) (stating that conclusory allegations of legal injury couched as factual allegations are insufficient to establish standing). Two of Plaintiff's four alleged harms, emotional harm and legal expenses stemming from the debt collection letter, are associated with the risk of future injury. Opp'n at 9–10.

The Second Circuit has held that separate harms stemming from a future risk can establish standing if a plaintiff can show sufficiently that the "threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *See*, *McMorris v. Carlos Lopez & Assocs.*, *LLC*, 995 F.3d 295, 300–03 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)) (outlining the test for a "substantial risk" of future identity theft) . For example, in *Bohnak*, the Second Circuit held that expenses incurred by plaintiff to mitigate her exposure to identity theft following exposure of her personally identifying information ("PII") were concrete

5

harms that foreseeably arose from a substantial risk of future identity theft. *See*, *Bohnak,* 79 F.4th at 286. By contrast, the Supreme Court held in *Clapper v. Amnesty Int'l USA*, that "respondents' self-inflicted injuries are not fairly traceable to the Government's purported activities . . . [and] their subjective fear of surveillance does not give rise to standing." *See*, 568 U.S. 398, 417–18 (2013). Thus, where a plaintiff has not shown sufficiently that "there is a substantial risk that the [future] harm will occur," then self-inflicted injuries are the product of speculation and cannot constitute a concrete harm.

Plaintiff's claims of expenses and emotional harms related to the debt collection letter fail to establish standing because he failed to show a substantial risk of future harm. Plaintiff contends that Defendant violated the FDCPA by using vague wording in its letter pertaining to the statute of limitations and accrual of interest. Opp'n at 9. While that may be the alleged statutory violation, Plaintiff's actual concern is potential debt collection actions that are speculative under the present circumstances. Plaintiff contends he is concerned about whether a partial payment of the debt may restart the statute of limitations because Defendant then may be able to sue to collect on the entire debt. *Id*.

The Complaint fails to allege plausibly that Defendant has engaged or will engage in any debt collection actions. In essence, Plaintiff alleges he received a debt collection letter from Defendant, that was confusing or misleading and allegedly injured him. *See generally*, Compl. The Complaint is void of any factual allegations that Defendant did anything other than send the letter. Significantly, as Plaintiff concedes, in addition to stating that the statute of limitations on the debt collection has expired, the letter specifically states that, "restarting the time period on this debt is prohibited by law, and whether or not you acknowledge, promise to pay, or make a payment on this debt, your creditor or debt collector will NOT sue you to collect this debt." *See*, Dkt. Entry

6

No. 1-1.  The letter continues, "you may CHOOSE to make payments. However, BE AWARE: if you make a payment, the creditor's right to sue you to make you pay the entire debt *may* START AGAIN." *Id*. (emphasis added).  Language such as "the creditor's right to sue you to make you pay the entire debt may START AGAIN," which is contingent on Plaintiff's own actions, poses only a speculative risk that the Defendant might sue to collect on the debt, similar to the speculative surveillance risk discussed in *Clapper*.  *See*, 568 U.S. at 418.  Therefore, Plaintiff has failed to allege plausibly any risk of future harm, much less a "substantial risk" of future harm, and his purported harms of incurring expenses to mitigate the risk of debt collection and emotional damage will not support constitutional standing.

While intangible harms of informational injury and fraudulent misrepresentation may constitute a concrete harm for standing purposes, the informational injury must stem from a public disclosure law, and a plaintiff must identify "downstream consequences" from failing to receive the required information.  *See*, *TransUnion*, 594 U.S. at 441–42.  The Second Circuit has held that to show "downstream consequences" a plaintiff must show that he has "an interest in using the information . . . beyond bringing [his] lawsuit."  *See*, *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).  Plaintiff has failed to plead plausibly an informational injury.

First, Plaintiff failed to allege that the FDCPA is a public disclosure law.  Nor can he as the FDCPA does not qualify as such.  For example, the Supreme Court has held that the Federal Election Commission Act is a disclosure law that can confer informational constitutional standing. *See*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 14 (1998) (the Court underscored that "[T]he Act imposes extensive recordkeeping and disclosure requirements").  In contrast, the FDCPA does not impose extensive recordkeeping and disclosure requirements.  *See*, *Manzanarez v. Madera Collection Servs.*, 722 F. Supp.3d 1074, 1080 (E.D.CA. 2024) ("[T]he FDCPA does not confer a

7

right of informational injury"). The FDCPA provisions Plaintiff cites only concern the illegality of making "false or deceptive representations," not any required disclosure requirements. Compl. ¶¶ 36–39. Second, Plaintiff puts forth no factual allegations of downstream consequences or his interest in using the information beyond bringing this suit. *See generally*, Compl. Therefore, Plaintiff's alleged informational injury is insufficient to establish standing.

Lastly, Plaintiff's attempt to establish standing through the common law analogue of fraudulent misrepresentation is unavailing. In order to recover for fraudulent misrepresentation, a plaintiff must prove under New York law: (1) a misrepresentation or an omission of material fact that was false and known to be false by the defendant; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) justifiable reliance of the plaintiff on the misrepresentation or material omission; and (4) injury. *Davidoff v. Hershfield*, 233 A.D.3d 926, 927 (2d Dept. 2024) (internal citation omitted). Plaintiff argues that the "time and money" he expended to mitigate the risk of financial harm caused by Defendant's omission or use of confusing language in the letter is analogous to fraudulent misrepresentation. Opp'n at 10. Plaintiff's arguments are unavailing.

Pursuant to *TransUnion*, a plaintiff's asserted injury must bear a "close relationship" to the harm recognized by the purported common law analogue. *See,* 594 U.S. at 424. This analysis is not conducted in a vacuum. The Second Circuit has yet to address this standard post-*TransUnion*. However, while not binding on this Court, a recent, post-*TransUnion* Fifth Circuit decision is particularly instructive and persuasive as to the fraudulent misrepresentation and FDCPA claims analysis. In *Perez v. McCreary, Vesekla, Bragg & Allen, P.C.*, where a plaintiff received a letter demanding payment on a delinquent debt, the Fifth Circuit held that "[t]he nature of the harm recognized by fraudulent misrepresentation is a traditional, *tangible* harm: the 'pecuniary loss' the

8

plaintiff sustains." 45 F.4th 816, 825 (5th Cir. 2022) (emphasis in original). Thus, unlike common law torts such as defamation or intrusion upon seclusion where the harms are the intangible concepts of reputation and privacy, fraudulent misrepresentation cannot be used as a common law analogue for intangible concepts such as confusion or loss of time. *Id*. ("Perez's confusion—which can only be an intangible harm, if it's a harm at all—is necessarily *different* 'in kind' from her common-law analog.") (citation omitted); *See also*, *Clark v. Eddie Bauer LLC*, WL 177755 at *5 (9th Cir. Jan. 17, 2024) ("[A]t common law, a claim for misrepresentation was available only if the plaintiff suffered pecuniary damages . . . Common law did not protect people like [plaintiff] who merely wished to transact in the future, before any damages were suffered.")

Plaintiff failed to plead plausibly that Defendant: (1) has or will sue him to collect on the debt; or (2) falsely claimed it will not sue Plaintiff; or (3) that Plaintiff relied on the letter to his detriment. Nor has Plaintiff made any allegations that the potential accrual of interest has happened and that it was an omission. A plaintiff who does not suffer an injury or harm following a fraudulent misrepresentation does not make out a claim pursuant to the tort. *See*, *Davidoff*, 233 A.D.3d at 927–28. As the Supreme Court stated in *TransUnion*, an individual exposed to a risk of future harm that ultimately does not materialize ordinarily would be cause for celebration, not a lawsuit. *See*, 594 U.S. at 436–37. Accordingly, Plaintiff has failed to allege that he suffered a concrete injury and, thus, lacks standing.

[Rest of page intentionally left blank]

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss this action is granted for lack of subject matter jurisdiction.

SO ORDERED.

Dated: Brooklyn, New York
       March 26, 2025

/s/
DORA L. IRIZARRY
United States District Judge
